# BALTIMORE CITY COURT.

Filed December 26, 1905.

BALTIMORE AND OHIO RAILROAD
COMPANY
VS.
ANTON TEXTOR.

(Three Cases).

W. Irvine Cross and Duncan K. Brent for Baltimore and Ohio Railroad Company.

Thomas G. Hayes and C. Dodd McFarland for Textor.

STOCKBRIDGE. J. (Orally):

The property owners' first and second prayers will be granted.

The third prayer will be refused. The third prayer is the prayer on the subject of benefits.

The fourth prayer is the prayer that deals with the failure to agree. I do not know that anything need be said with regard to that prayer, except that the great preponderance, in fact, I might say the almost unanimous line. of authorities is to the effect that where a petition alleges an inability to agree, and the owner takes no issue upon that averment, it is thereafter too late to raise that failure to agree as an objection.

The petition in each of these cases did set out the failure to agree. It is true that there was no evidence taken upon the subject before the court, but neither was any issue made upon the subject, nor was it made one of the grounds of the exceptions which were filed, and the counsel who prepared the exceptions certainly prepared them with considerable care, and it can be hardly assumed that he overlooked the matter on which they intended to rely.

The fifth prayer deals with the question of the interest of the parties. The provisions of the fifteenth section of the charter of the Baltimore and Ohio Railroad Company are not entirely clear as to what is meant by this, and it is an open matter, perhaps, for construction whether the interest which is there referred to is the interest of the property owner which is sought to be condemned or the interest which the road itself is seeking to acquire. It makes, however, practically no difference with regard to this fifth prayer, because as I read the several petitions filed in this case the interest of the property owner and also the interest to be acquired by the railroad are fully set out.

The sixth prayer of the property owner will be granted.

The seventh prayer will be refused. It is the one prayer of the thirteen that is perhaps most open to criticism in the matter of form.

The eighth prayer will be granted.

The balance of the property owner's prayers will be refused.

From these rulings on the prayers it necessarily follows that the inquisitions which were filed respectively on the 15th and 24th of July will be set aside. These two inquisitions are certainly defective in this important particular: In each case there is sought to be condemned in one, and the same proceedings property which 'in both leasehold and in fee-simple. It is sought to be condemned as being the property of Anton Textor and Katherine Textor, his wife, and the award of the jury in neither case makes any apportionment whatever of the damages.

Now, the proper course is undoubtedly for a jury of condemnation to ascertain, first what is the entire compensation which is due to the property owner or owners as though the property belonged to a single person, and then to apportion that sum among the different parties according to their respective rights. That is especially true in a case of this character, because while it may be as between two persons who are tenants in common that they may litigate among themselves as to what may be their respective rights arising out of a fund, in the State of Maryland, we do not recognize any rights existing as between a husband and wife to litigate with each other with regard to property. And in that

condition we are then confronted with this: That in a lumped sum is included the value of the property both leasehold and fee, in the leasehold value of which it is undisputed that Katherine Textor has no interest whatsoever. When it comes to deal with the fee property, there the situation is somewhat more complex.

In a number of cases decided in this State, the expression is used that a married woman is a stranger to the title, when her only interest is an inchoate right of dower. That is perfectly true, and yet that does not mean that a married woman's inchoate right of dower is not a property right of some value. It is not a right which may be made a subject of execution, of course, and yet a condemnation proceeding which entirely omitted the wife in the event of the prior death of the husband might well give her a claim as against the condemning party.

In Ohio, New York and Missouri the question has been passed upon and it has been held that in the condemnation proceedings the wife's inchoate right of dower was barred by the proceedings. Most of those cases, though, have occurred not exactly as the present case has arisen. They have arisen in several instances where there has been not a condemnation proceedings but dedication by the husband to the public of a right-of-way, as for a street or open road, and then after the death of the husband there has been an attempt to assert the wife's right of dower in the property as dedicated to public use, and it has been held that the act of dedication by the husband has barred any claim of the wife for dower. And in passing upon questions of that character the courts in these three States have used the expression as applying it to a condemnation proceeding.

All cases that I have thus far been able to discover have been cases that have arisen not with regard to the condemnation of rights of way for railroads, or of land for railroad purposes, but of what are strictly and legitimately public rights of way, as in the case of the streets of a city or highways in the country that cover a portion of the State. It does not necessarily follow, of course, that the same rule would be applied.

The question has also arisen in New Jersey, and there a somewhat different view has been taken from that taken in the other three states. In New Jersey, the rule has been that while the interest in the land is extinguished, yet the wife has a claim in equity against the damages awarded, and is entitled to an equitable portion thereof. As it has not been in its concrete form directly passed upon in this State, therefore, I do not deem that I would be justified in holding the wife to be an improper party to the proceedings, but that inchoate right is a matter for estimation of value by the jury: it may be a nominal value of one dollar, at the same time it is a right which the jury must taken into consideration, and in any opportionment for damages make their estimate of it.

With regard to the third of the lots involved in these cases, that is the lot at the corner of Eutaw and Henrietta streets, and which was condemned under the inquisition filed on the 10th of July, 1905, the sole question is one of valuation. There the property was entirely leasehold, and there was not joindure of Mrs. Textor in that proceeding.

The evidence with regard to the valuation upon this lot, except for the testimony of the appellant himself, is practically all on one side. Mr. Knabe, who was the first witness called by the appellant, testified positively that he was not competent to speak of the value of this particular piece of property. Mr. Vickers' estimates were of a character to show that he was in about the same position as Mr. Knabe. I believe he placed a higher value on the land than anyone else, valuing it some $2,000 higher even than the appellant himself. Mr. Aaron's testimony, of course, took only into account what it would cost to build at the present prices of construction improvements of a character similar to those now on the lot.

That is a very different question from the question of the actual value of those improvements as they stand there today, having an age of about, as near as I can tell from the testimony, twenty to twenty-five years. Mr. Aaron's estimate of the value of materials there, being from $100 to $150, does not indicate that the improvements themselves are probably in what would be called the best of condition.

The evidence, therefore, as to value being practically narrowed down to

that of the Messrs. Payne and Lindsay upon the one side and Mr. Textor upon the other, and I have examined it with some care. I am disposed to feel that the valuation of the jury is a fair award for the value of that property taken, and, therefore, that inquisition will be confirmed.